The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. Therefore, plaintiff's motion for a new hearing and additional depositions is without merit and is hereby denied.
***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are bound by and subject to the Workers' Compensation Act, the defendant regularly employing three or more persons.
2. At the time of the alleged injury giving rise to this case, the employee-employer relationship existed between the plaintiff and the defendant.
3. At the time of the alleged injury giving rise to this case, the defendant was a qualified self-insurer, with Alexsis acting as its third-party administrator.
4. The plaintiff's average weekly wage may be determined from an I.C. Form 22 completed by the defendant, a copy of which was received into evidence as Stipulated Exhibit #2.
***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 38 years old. He is a high school graduate. Plaintiff's employment before 1996 included work as a meter reader for a gas company in California, work in a paint and body shop owned by his father, a job sorting mail for the U.S. Postal Service, work as a shipping clerk with Dillard's, and a job for Frito Lay as an order puller. Beginning in early 1995, plaintiff had a part-time job at the Charlotte Coliseum as a parquet runner, requiring him to deliver pizza to fans attending Hornets basketball games.
2. Plaintiff had experienced problems with his legs and feet before he began work with the defendant, including treatment for the same condition for which he sought recovery in this case, plantar fasciitis. In January 1993, plaintiff suffered a .44-caliber gunshot wound to his right leg, resulting in a "through and through" fracture to the lower leg. On 7 May 1994, plaintiff complained to his doctor of a swollen left foot and ankle and sore left calf, noting to the doctor that he was having trouble with his postal service job which required him to be on his feet all day.
3. In May 1995, while employed at Dillard's (in a job which plaintiff testified did not involve much walking) plaintiff returned to his doctor and complained of bilateral foot pain which had been troubling him for two and one-half to three months. Plaintiff was diagnosed with plantar fasciitis, left greater than right, and he was given shoe inserts and medication. Plaintiff again sought treatment for his plantar fasciitis and left ankle pain on 12 June 1995.
4. Plaintiff began work for the defendant as a meter reader in April 1996. His duties included reading gas meters on various assigned routes. This job required that plaintiff walk and ride between meters, the frequency of each depending on the route, entering the data read from each meter into a hand-held electronic storage device. Plaintiff was required to read an average of forty meters read per hour, a job which required a great deal of walking.
5. Thus, less than one year before he became employed with the defendant in April 1996, plaintiff was under medical care for several months for exactly the same condition and symptoms that he alleged in this case were caused by his walking in the meter reader job. At the hearing, plaintiff, when asked about any prior problems with his feet, adamantly and repeatedly denied such problems. Plaintiff also wrote a statement on 18 December 1996 stating he never had planter faciitis prior to the "excessive walking involved in meter reading." When then confronted with the specific medical evidence at the hearing, plaintiff's only explanation was that he had somehow forgotten about all of the medical treatment he had received. The undersigned finds that plaintiff's testimony in this regard is not credible.
6. On 1 November 1996, plaintiff saw his doctor with complaints of swelling and pain in his right knee (the location of the previous gunshot wound), swelling of his left ankle, and pain in both heels when he walked. He was treated with a knee brace, an ankle orthotic, heel pads, and medication.
7. At the hearing, plaintiff claimed that on 14 November 1996 he was walking his route when he stepped on a tree root, causing pain in his right Achilles tendon. In later statements, however, plaintiff made no mention of any such incident and to the contrary, denied that any specific event produced his symptoms.
8. Even if plaintiff's testimony about the alleged incident of 14 November 1996 were accepted by the undersigned as credible, plaintiff's own version of the event is that he was performing his work in the usual way; that his job required that he walk on all types of terrain; that he regularly had to negotiate around trees and step on roots; that he did not slip or fall; and that the only unusual aspect of this incident was the fact that he felt pain. Medical records received into evidence reveal that plaintiff saw his doctor on 14 November 1996, was diagnosed with a possible mild stretch of the right Achilles tendon, and that the entire treatment he received for this event was ibuprofen and ice to the right foot. The doctor approved plaintiff's return to his regular work schedule and duties the next day.
9. On 16 November 1996 plaintiff again visited the Nalle Clinic, complaining again of pain in his heels, and was told he had plantar fasciitis. Plaintiff saw his regular physician, Dr. Beard, for his complaints of heel pain on 20 November 1996, and he told the doctor at that time that "he has a part time job in the Charlotte Coliseum running the pizza concessions and does have to go up and down the stairs there a lot". Dr. Beard told plaintiff that he was unable to say whether plaintiff's plantar fasciitis was related to his employment as a meter reader.
10. From November 1996 through March 1997, plaintiff was treated for plantar fasciitis, a condition involving inflammation of the tissue connecting the arch and heel. Dr. Beard referred plaintiff for further evaluation by Dr. Foster, an orthopaedist at the Nalle Clinic. Dr. Foster agreed with the diagnosis of plantar fasciitis, and over the period from mid-December 1996 to March 1997, he prescribed a course of treatment including orthotic devices, several cortisone injections, and ultimately casting of plaintiff's left foot. Dr. Foster obtained a bone scan to rule out any stress fracture, and the results of that test, as well as an MRI done later, were normal. Dr. Foster's note indicates that he feels that plaintiff's foot problem, or presumably some aspect of his foot problems, were related to his work.
11. From November 1996 through 19 March 1997, plaintiff was released by all of his physicians to work with some restrictions, and he was provided with light duty work by the defendant. This work consisted of office work and some collection work involving limited walking, all of which was consistent with the doctors' restrictions. Plaintiff missed no time from work before 20 March 1997.
12. At the hearing, plaintiff contended that he suffered some further injury to his left foot on 19 March 1997 when he purportedly stepped in a hole while walking across a lawn, and felt a "tear" in his left foot. When plaintiff saw Dr. Foster the next day, however, he reported simply that "he was out walking" and felt pain in his foot. Plaintiff made no mention of having stepped in a hole or of any unusual occurrence.
13. Shortly after this alleged incident, plaintiff prepared another handwritten statement in which he was asked to "write down exactly what happened." In that statement, which is two pages long and with every paragraph separately initialed by the plaintiff, there is no mention whatsoever of stepping in any hole or of any unusual event. The undersigned finds plaintiff's testimony that he stepped into a hole on 19 March 1997 as not credible.
14. In order to rule out any "tear" or soft tissue injury, Dr. Foster ordered an MRI, and that test was normal, leading Dr. Foster to assure plaintiff that he found no sign of any structural injury to plaintiff's left foot. Because plaintiff was complaining that he could not do any walking due to continuing pain in his heels, Dr. Foster signed him out of work and suggested that he try a course of treatment with a podiatrist. Plaintiff undertook a further period of casting on his left foot and therapy under the care of Dr. Ryan, a podiatrist, and he did not work from 20 March 1997 through 30 May 1997. This was the first time that plaintiff actually missed any work as a result of the problems with his feet.
15. Plaintiff returned to work in a light duty position with the defendant on 2 June 1997. On 9 June 1997, plaintiff, pursuant to a referral from Dr. Foster, had a consultation with Dr. Sebold, an orthopaedic surgeon specializing in foot and ankle ailments. Dr. Sebold told plaintiff that plantar fasciitis occurs spontaneously, and that he would not consider plaintiff's condition to be work-related. Dr. Sebold did not recommend that plaintiff have any further treatment other than orthotic devices and he did not restrict him from working.
16. After returning to work on 2 June 1997, plaintiff continued to perform light duty work for the defendant through the summer and into the fall of 1997. On 9 October 1997 the defendant offered plaintiff a permanent, full time position as a cashier. Plaintiff had been performing this job while on light duty restrictions, and it was consistent with his doctor's recommendations. Plaintiff, however, refused to accept the cashier position and did not express an interest in any other full-time positions available with the defendant.
17. After he refused to take the cashier job, plaintiff did not work from 24 October 1997 until 23 December 1997. He then returned to a light duty office position which the defendant offered him, and he worked in that job until 2 January 1998. On that day, plaintiff voluntarily resigned his employment with the defendant in order to pursue employment with BellSouth. The position at BellSouth paid better than any job plaintiff previously had with the defendant. Plaintiff was subsequently terminated by BellSouth for reasons completely unrelated to his physical condition.
18. Dr. Foster completed a form and checked "yes" indicating that `injuries" to plaintiff's feet, "partial fascial tear to the 4th and 5th metatarsal area on the left foot originate from the 19 March 1997 incident when he was injured while walking, stepped in a hole and his repetitive walking while working as a meter reader" for defendant. Dr. Foster did not testify. His opinion in responding to the question above is given no weight because the basis of his opinion is not explained, and the opinion is based upon an incident not found as fact and an unsubstantiated characterization of plaintiff's medical problem. Instead, the undersigned relies upon the testimony of Dr. Sebold, an expert in foot and ankle ailments, in making the following findings to the contrary.
19. Plaintiff suffers from chronic plantar fasciitis. That condition, however, was not caused or aggravated by his employment with the defendant. Plaintiff was not placed at an increased risk of developing this condition as a result of his job as a meter reader for the defendant. Plantar fasciitis is a condition that occurs in persons in all walks of life, and it is as common in persons who do sedentary work as those who work on their feet. In most cases, the condition arises and resolves spontaneously, and it has not caused plaintiff any permanent disability.
20. Plantar fasciitis is not a condition which is characteristic of and peculiar to plaintiff's job as a meter reader. Instead, it is a condition to which the general public is equally exposed.
21. Plaintiff did not suffer any "tear" or other traumatic injury to either foot during his employment with the defendant. Diagnostic tests to determine the existence of any soft tissue tear of the left foot were negative, and even if plaintiff had some partial tear of the soft tissue around the fascia, it most probably resulted not from any accident, but from the multiple injections that plaintiff had in his left foot and heel. Finally, even if plaintiff had such a tear it did not affect this condition, disability or medical treatment.
22. Plaintiff did not experience any interruption in his work routine on 16 November 1996 or 19 March 1997. Plaintiff has not established that he suffered an accident arising out of and in the course of his employment.
***********
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence that his plantar fasciitis or any other condition from which he suffered is characteristic of and peculiar to his employment with the defendant, excluding all ordinary diseases of life to which the general public is equally exposed outside said employment. N.C.G.S. § 97-53(13); Booker v. Duke MedicalCenter, 297 N.C. 458 (1979).
2. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment. N.C.G.S. § 97-2.
3. Plaintiff has failed to prove by the greater weight of the evidence that his employment with the defendant caused any injury to his feet.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim must under the law be, and is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of September 1999.
S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN JR. CHAIRMAN
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
DCS/bjp